**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ROSEMARY GARCIA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | 2:09-cv-02671-JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| CITY OF SURPRISE, ) | [Re: Motion at Docket 44] |
| ) | |
| Defendant. ) | |
| ) | |

## I. MOTION PRESENTED

At docket 44, defendant City of Surprise ("City" or "defendant") moves pursuant to Federal Rule 56 for summary judgment in its favor on all claims. Plaintiffs Rosemary Garcia ("Garcia") and Apreel Nye ("Nye"; collectively "plaintiffs") oppose the motion at docket 46. Defendant's reply is at docket 48. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

Plaintiffs were detectives with the City of Surprise Police Department. This lawsuit arises out of alleged gender and racial discrimination during their employment and in termination of their employment.

Nye was hired in 2003.  In January 2008, Nye informed her supervisor she was interested in a special assignment as a crisis negotiator.  Sergeant Norm Owens ("Owens") was involved in the screening process for potential applicants.  Owens informed Nye that she was not eligible to test for the assignment because she had received "major disciplinary action" within the previous twelve months.  Nye had received a 40-hour suspension for driving under the influence of alcohol.  Nye contends that two male officers who had been disciplined within the previous twelve months were nonetheless permitted to test for the special assignment.  Nye further contends that a different male officer received a different special assignment after major disciplinary action had been taken against him.

Nye filed a written complaint of gender discrimination.  The City undertook an investigation and concluded that no intentional discrimination had taken place, but that "Nye was unfairly denied the opportunity to test for the special assignment."[1]

Garcia was hired in November 2004.  She is Hispanic and Native American.  In November 2008, Garcia received a photo radar ticket for running a red light.  Garcia did not challenge the ticket or dispute that she ran the red light.  She paid a fine and went to traffic school.  Garcia alleges that she was discriminated against insofar as two white male officers were given an opportunity to explain themselves and request leniency, took that opportunity, and were consequently not required to pay a fine or attend traffic school.

---

[1]Doc. 44 at 4.

On January 8, 2009, an anonymous voice mail was left for Sergeant Jeremy Robertson ("Robertson"), an internal affairs investigator.  The message accused officer Jeremy Atwell ("Atwell"), with whom Nye was romantically involved, of using steroids. The police department traced the call to a pay phone and subsequently obtained security camera footage from a nearby market.  The surveillance video showed Garcia and Nye arriving at the location around the time of the call, exiting the camera's view towards the pay phone, and returning to Garcia's vehicle shortly after the call was made.  Garcia and Nye met with Atwell upon returning to the police department the same day.  The City undertook an internal affairs investigation of Garcia and Nye for having potentially made the anonymous phone call and violating department rules and orders.

On January 14, 2009, Robertson received another anonymous voicemail message.  The message was from an anonymous male caller and accused Atwell of using steroids.  On January 15, 2009, Nye was "sequestered for approximately 45 minutes" while Robertson and an officer from another police department interviewed Garcia.[2]  Garcia was provided a notice of the investigation and a Garrity Admonition, which advised her that if she refused to answer questions her employment could be terminated.  Garcia cooperated and made conflicting statements.  Nye was then provided a notice of the investigation and a Garrity Admonition.  "Nye opted not to

---

[2]Doc. 44 at 6.

answer any of the questions because she felt threatened and was uncomfortable with the way she and Garcia were being treated."[3]

After the interviews, Nye and Garcia were placed on paid administrative leave for the duration of the investigation.  On January 23, 2009, Garcia was interviewed again. Garcia received another notice of investigation and another Garrity Admonition.  Garcia refused to answer questions.

On February 3, 2008, Garcia and Nye's employment was terminated.  On May 5, 2009, Nye filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging racial and gender discrimination and retaliation in violation of Title VII.  Garcia filed a charge with the EEOC on May 26, 2009, alleging similar discrimination and retaliation.  Garcia received a right to sue letter on September 25, 2009 and Nye received a right to sue letter on October 7, 2009.

Plaintiffs filed separate suits in federal court.  Both parties assert claims for discrimination and retaliation under Title VII.[4]  The cases were consolidated on April 2, 2010.[5]  Nye and Garcia each assert claims for gender discrimination and retaliation based on termination of their employment and based on their treatment during the internal affairs investigation.  Nye asserts a separate claim for gender discrimination based on the City's refusal to permit her to test for the special assignment.  Garcia asserts a separate claim based on the handling of her traffic citation.

---

[3]Doc. 46 at 3.

[4]*See, e.g.*, doc. 1.

[5]Doc. 13.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[6]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]  In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[9]  The reviewing court may not weigh evidence or assess the credibility of witnesses.[10]  The burden of persuasion is on the moving party.[11]

### IV.  DISCUSSION

**A. Applicable Legal Framework**

The applicable legal framework for plaintiffs' discrimination claims is that established in *McDonnell Douglas Corp. v. Green*.[12]  To establish a prima facie case of discrimination based on disparate treatment, a plaintiff must show "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate

---

[6]Fed. R. Civ. P. 56(c)(2).

[7]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8]*Id.*

[9]*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[10]*Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[11]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[12]411 U.S. 792, 802 (1973).

expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably."[13]  To state a prima facie case of retaliation, a plaintiff must show "(1) that she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision."[14]

Once a plaintiff makes either prima facie showing, the burden shifts to the defendant "to articulate a nondiscriminatory reason for each adverse employment action."[15]  "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."[16]

If the defendant is able to articulate a nondiscriminatory reason for the challenged action, the burden shifts back to the plaintiff to establish that the purported reason is pretextual.[17]

## B. Termination of Plaintiffs' Employment

Defendant argues that plaintiffs are unable to satisfy the fourth element of a prima facie showing of discrimination with respect to termination of their employment. The court agrees that plaintiffs have not shown that any male officers–similarly situated

---

[13]*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (adapting *McDonnell Douglas* to the failure to promote context).

[14]*Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

[15]*Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000).

[16]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

[17]*Chuang*, 225 F.3d at 1126.

or not–who refused to answer questions during an internal affairs investigation were not

terminated.  Plaintiffs have therefore not made a prima facie case of discrimination with

respect to termination of their employment.  Even if they had, plaintiffs have not rebutted

defendant's nondiscriminatory reason for termination–refusal to answer questions

during an internal affairs investigation.

Defendant argues that plaintiffs are unable to satisfy the first element of a prima

facie showing of retaliation with respect to termination of their employment.  The thrust

of plaintiffs' retaliation claim in this context is that they were fired because of their

relationships with Atwell.  Defendants maintain that personal relationships do not

constitute "protected activity" under 42 U.S.C. § 2000e-3.  Plaintiffs do not argue

otherwise.  The court agrees that personal association does not constitute protected

activity under § 2000e-3.[18]  As with plaintiffs' discrimination claim, even if they had made

a prima facie showing of retaliation, they have not rebutted defendant's non-retaliatory

explanation–again, that termination was based on plaintiffs' refusal to answer questions

during an internal affairs investigation.

**B. Treatment During Internal Affairs Investigation**

During the investigation, Garcia and Nye were asked to give up their weapons,

cell phones, and any recording devices.  Nye was not allowed to call her mother, her

child's caretaker, or an attorney.  Garcia was interviewed five times.[19]

----

[18]*See* 42 U.S.C. § 2000e-3(a).  *Cf. Learned v. City of Bellevue*, 860 F.2d 928, 931–33
(9th Cir. 1988) (discussing both clauses of § 2000e-3(a)).

[19] Plaintiffs' characterization is that "Garcia was subjected to not one but *five* interviews
during the" investigation.  Doc. 46 at 12.  Garcia's "five interviews" comprised three sessions on
January 15 and two attempted sessions on January 23. *See* doc. 45-15 at 9, 18, 21, 28,

Plaintiffs state that "[o]ther male officers similarly situated have not been treated in the same manner."[20]  Plaintiffs cite the deposition of detective Mike Baldwin ("Baldwin").  Baldwin only "participated in internal investigations" on four occasions, but in his experience, subjects were not asked to empty their pockets or patted down, and they did not have their phones taken away or told that they could not make a phone call.[21]  Drawing reasonable inferences in plaintiffs' favor, Baldwin's deposition would create an issue of material fact as to the fourth element of the *McDonnell Douglas* framework.  Defendant maintains that Baldwin was not similarly situated and that the treatment of Garcia and Nye did not constitute adverse employment action.[22]  It is unnecessary to resolve those questions.

Even assuming plaintiffs have made out a prima facie case of gender discrimination stemming from their treatment during the internal investigation, defendant has provided a legitimate, nondiscriminatory reason for that treatment.  The City has also produced evidence that internal affairs investigators "have discretion on how to conduct investigations based upon the specific allegations in each case."[23]  The City maintains that the investigators took the measures they did not because Garcia and Nye are female, but because they wanted to ensure the integrity of the investigation–the

---

[20]Doc. 46 at 11.

[21]Doc. 45-21 at 3.

[22]Doc. 48 at 8.

[23]Doc. 45-17 ¶ 30.

-8-

City wanted to minimize the potential for collusion and evidence destruction.[24]  Plaintiffs

have not attempted to show that the City's prerogative tactics were pretextual.

Plaintiffs devote considerable space in their response to the competence of the

investigation.[25]  Whether the investigation was well executed is immaterial in light of

defendant's legitimate, nondiscriminatory explanation.

## C. Nye's Efforts to Apply for the Special Assignment

Nye argues that the City discriminated against her on the basis of her gender by

denying her the opportunity to test for a special assignment as a crisis negotiator.  Nye

was denied the opportunity to test based on her having been suspended for 40 hours

for driving under the influence of alcohol.  Nye maintains that Officers Ian Murton

("Murton") and Doug Lynch ("Lynch") were "selected for discretionary assignments

during the same time period" despite having had disciplinary suspensions without pay.[26]

Similarly, Nye maintains that Officer John Vance ("Vance") "received a forty hour

suspension within a year of his selection for a special assignment."[27]  The City argues

that those officers were not similarly situated–Murton and Lynch because they were

officers, not detectives and because their one-day suspensions did not rise to the level

---

[24]Nye's requests to call her mother were denied because "Nye's mother lived with Nye and Atwell."  Doc. 45-13 at 3.

[25]*See* doc. 46 at 12–13.  For instance, plaintiffs maintain that defendant "has not and cannot reconcile the fact that it makes no sense for Nye or Garcia to have made the call in question [because] Nye was romantically involved with Officer Atwell at the time."  *Id.* at 13. Defendant has presented evidence that it was investigating Nye and Garcia because there was surveillance footage placing them near the pay phone from which the call was made.  Whether it "makes sense" that Nye or Garcia would have made the call is therefore immaterial.

[26]Doc. 46 at 2, 6–7.

[27]Doc. 46 at 7.

of "major disciplinary action," and Vance because he did not apply for the special

assignment of crisis negotiator.[28]

It is unnecessary to determine whether Murton, Lynch, or Vance were similarly

situated to plaintiffs.  The City has presented evidence that Owens "did not learn of the

disciplinary action of [Murton and Lynch] until after the assignments were made."[29]

Moreover, the City has presented evidence that Nye's denial was based on *Owens's*

*misunderstanding of the City's policy*.[30]  The City has therefore presented a legitimate

and nondiscriminatory reason for the denial of Nye's opportunity to test for the special

assignment.  Nye argues only that Owens' misunderstanding of City policy does not

suffice because "the policy was only misconstrued to the disadvantage of Nye, while all

similarly situated men were permitted to test for their desired special assignments."[31]

Nye, however, is required to show pretext "either directly by persuading the court

that a discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence."[32]  The Ninth Circuit

has held "that a plaintiff at the pretext stage *must produce evidence in addition to that*

*which was sufficient for her prima facie case* in order to rebut the defendant's

---

[28]Doc. 44 at 15.

[29]Doc. 45-5 at 3.

[30]*See id.* at 3–4 ("Owens also stated that he did not learn that Surprise Police policy only disqualifies recipients of major disciplinary action for professional opportunities and not special assignments until after the assignments were made.").

[31]Doc. 46 at 9.

[32]*Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

showing."[33]  Nye's argument that Owens's misunderstanding is not a nondiscriminatory

reason because it only negatively affected Nye rehashes the fourth element of her

prima facie case.  Nye has not offered evidence that Owens's misunderstanding was

pretextual.  To the contrary, Nye has acknowledged that Owens "wasn't sure about" and

"didn't understand" the City's policy.[34]

## D. Garcia's Traffic Ticket

Garcia claims that she was discriminated against on the basis of her race when

she was required to pay a fine and attend traffic school after being cited for running a

red light.  Garcia argues that Sergeant Greg Welch ("Welch") and Lieutenant Craig

Scartozzi ("Scartozzi")–both white males–were not required to pay fines or attend traffic

school despite having been cited for running red lights.

The City maintains that neither Welch nor Scartozzi is similarly situated to Garcia

because Welch and Scartozzi challenged their traffic tickets, and Garcia did not.  The

City has produced evidence that Welch "contested the citation . . . because [he] was on

duty and attempting to avoid a collision with another vehicle when [he] ran the red

light."[35]  Similarly, the city has presented evidence that Scartozzi "contested the traffic

citation because [he] was on duty and responding to a call for service at the time [he]

ran the red light."[36]  Garcia argues only that it is unclear how Welch and Scartozzi

---

[33]*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994)) (emphasis added).

[34]Doc. 45-3 at 11.

[35]Doc. 45-13 at 3.

[36]Doc. 45-14 at 3.

contested the citations.  That is immaterial.[37]  Garcia has not presented evidence that

Welch and Scartozzi did not contest their traffic tickets and has not presented evidence

that she did.  Garcia stated in her deposition that she did not challenge her citation.[38]

Consequently, Garcia has not established that Welch and Scartozzi were similarly

situated.

The City maintains that it required Garcia to pay a fine and attend traffic school

because she admittedly ran the red light.  The City's legitimate, nondiscriminatory

reason for requiring Garcia to do so is somewhat bolstered by the evidence that Welch

and Scartozzi challenged their citations while Garcia did not.  More importantly, Garcia

has not presented any evidence that the City's proffered explanation is pretextual.

## V.  CONCLUSION

For the reasons above, defendant's motion at docket 44 for summary judgment is

**GRANTED**.  The Clerk shall please enter judgment for defendants on all claims.

DATED this 23rd day of March 2011.


                                                /s/ JOHN W. SEDWICK
                                                UNITED STATES DISTRICT JUDGE

---

[37]Garcia maintains that "[a]t the very least, issues of fact exist regarding what actions
Welch and Scartozzi took to avoid responsibility for their traffic violations in contrast to Garcia."
Doc. 46.  Garcia, however, has not presented *any* evidence that she contested her citation.

[38]Doc. 45-12 at 21.